IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-01603-BNB-MJW

BRIAN L. BROWN,

Petitioner,

v.

H.A. RIOS, Warden,

Respondent.
_____

**ORDER**
_____

This matter is before me on the **Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody** (the "Application"), filed by Brian Brown (the "petitioner") on December 7, 2005.[1]  An Order to Show Cause why the application should not be granted was entered on December 20, 2005 (filed December 29, 2005). The respondent filed "Response to Order to Show Cause" (the "Answer") on March 6, 2006. The petitioner filed a Reply to Defendants [sic] Answer on March 27, 2006.   For the following reasons, the Order to Show Cause is DISCHARGED and the Application is DENIED.

**I.  BACKGROUND**

At all times pertinent to the allegations of the Application, the petitioner was incarcerated by the Bureau of Prisons at the United States Penitentiary in Florence, Colorado ("USP").  On

---

[1] The petitioner filed his initial Application on August 18, 2005.  He filed Amended Applications on November 17, 2005, and on December 7, 2005.  On January 4, 2006, the court granted the petitioner's motion to withdraw the Amended Application filed on November 17, 2005. The operative pleading in this action is the Amended Application filed on December 7, 2005. *Minute Order* dated January 4, 2006.

September 9, 2004, the petitioner was provided with a copy of an incident report which charged him with violations of Code #330, Being Unsanitary/Untidy; Code #307, Refusing an Order; and Code #103, Setting a Fire. *Answer*, Exhibit B, first consecutive page. The incident report states:

> On 09-07-04,[2] at approximately 11:35AM, while serving the noon meal in Building 63, inmate Brown #05937-010 began throwing his noon meal onto the range. He then threw some newspapers from his cell onto the range that he had set on fire. I ordered this inmate to "cuff up" and he refused, stating "Fuck you mother fuckers, get a team". The fire was extinguished.

Id.

The incident report was forwarded to the Unit Disciplinary Committee ("UDC") for further disposition on September 9, 2004. Id. at second consecutive page. The UDC referred the matter to the Discipline Hearing Officer ("DHO") for further processing. Id. at first consecutive page.

A hearing was held before the DHO on September 14, 2004. Id. at Exhibit E, § 1B. The petitioner waived his right to witnesses and a staff representative. Id. at Exhibit D; Exhibit E, p. 1. After considering the incident report, the investigation report, and statements of the petitioner, the DHO found the petitioner guilty of violating Codes #103 and #307. Id. at Exhibit E, pp. 1-2. The DHO dismissed the charge which accused the petitioner of violating Code #330. Id. at p. 1. The DHO imposed sanctions, including the loss of good conduct time. Id. at p. 2. The DHO did not complete the section of the DHO report entitled "Reason for Sanction or Action Taken." Id.

---

[2]The reporting officer recorded the date of the incident as September 7, 2004. Id. at Exhibit B. The reporting officer subsequently submitted a memorandum to the DHO wherein he stated that the correct date of the incident was September 8, 2004. Id. at Exhibit F. At the disciplinary hearing, the DHO noted the error and affirmed that the correct date of the incident was September 8, 2004. Id. at Exhibit E, p. 2. The exact date of the incident, however, does not affect my analysis of the issues set forth in the Application.

at p. 3. The DHO's report was delivered to the petitioner on September 16, 2004. Id.

The petitioner appealed the DHO's decision to the Regional Director for the BOP. The Regional Director upheld the DHO's actions, but instructed the DHO to amend his report to specifically state the reasons for the sanctions. Id. at Exhibit H. The DHO completed an amended report which detailed the reasons for imposing the sanctions. Id. at Exhibit G, p. 2. The amended report was delivered to the petitioner on November 11, 2004. Id.

The petitioner filed his Application on December 7, 2005. The Application is not a model of clarity. However, it appears that the petitioner is asserting the following three claims:[3]

Claim One:   the petitioner was denied his due process rights because (a) he did not receive a copy of the incident report within 24 hours; (b) he was not provided a UDC hearing within three days; (c) he was denied access to legal materials that were necessary to prepare his defense, and (d) the DHO was not impartial;

Claim Two:   the petitioner was denied his due process rights because the evidence against him was insufficient; and

Claim Three:   the petitioner was denied his due process rights because the DHO changed facts on the report.[4]

---

[3] To the extent the plaintiff attempts to bring claims other than those I have identified, those claims are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

[4] All three claims cite to a "memorandum" for additional details regarding the claims. The petitioner does not attach a memorandum to the operative Application (filed December 7, 2005). The only memorandum filed by the petitioner is attached to his initial Application (filed August 18, 2005). *Memorandum in Support of Petition* (the "Memorandum"), filed August 18, 2005. Out of an abundance of caution, I have reviewed that Memorandum in my analysis of the

3

## II. ANALYSIS

To satisfy due process requirements in a disciplinary proceeding, a prisoner is entitled to:

> (1) "written notice of the charges" against him at least twenty-four hours before the hearing; (2) the opportunity "to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; and (3) a "written statement of the factfinders as to the evidence relied on and the reason for the disciplinary action" taken.

Smith v. Maschner, 899 F.2d 940, 946 (10th Cir. 1990) (quoting Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974)). "Additionally, in order to comport with due process, there must be some evidence to support the hearing panel's decision . . ., and the decisionmaker must be impartial." Gwinn v. Awmiller, 354 F.3d 1211, 1219 (10th Cir. 2004) (citing Wolff, 418 U.S. at 592).

### A.  Claim One

#### 1.  Notice

The petitioner claims that he was denied due process because prison officials did not comply with the Code of Federal Regulations which require that a copy of the incident report be served on the inmate within 24 hours of the incident. *Application*, p. 3; *Memorandum*, pp. 4-5.

The process due to an inmate with regard to a disciplinary proceeding is dictated by the Supreme Court's decision in Wolff v. McDonnell, not by Code of Federal Regulations. The Wolff decision does not require that prison officials provide an inmate with notice of the charges against him within twenty-four hours. Wolff requires only that written notice of the charges against the inmate be provided to him at least twenty-four hours before the disciplinary hearing. The petitioner was provided with a copy of the charges against him on September 9, 2004--five

---

petitioner's claims.

4

days before the disciplinary hearing on September 14, 2004. Therefore, the petitioner had ample notice under Wolff.

### 2.  Timing of UDC Hearing

The petitioner claims that he was denied due process because prison officials did not comply with the Code of Federal Regulations which require a hearing before the UDC within three days from the date staff became aware of the incident. *Application*, p. 3; *Memorandum*, p. 6. Wolff does not require a UDC hearing.

### 3.  Denial of Access to Legal Materials

The petitioner claims that he was "denied access to law materials to prepare a defense" in violation of his due process rights. *Application*, p. 3. Due process requires that an inmate be provided the opportunity to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. The DHO report states the following:

> The inmate alleged he was denied access to the legal material and law library which effected [sic] his ability to defend himself against said charges. When questioned if he had requested same in writing he indicated he had however he could not prove this as he presented no evidence to support this allegation.
> \* \* \*
> Upon completion of hearing and notification of finding, inmate Brown announced that he had evidence located within the confines of his cell he wished to present on his behalf. The DHO informed inmate Brown that said findings would be set aside pending delivery of said evidence, thereby affording him every opportunity to prove his innocence of said charges. Inmate Brown declined the opportunity given by the DHO to allow him to return to his cell and retrieve said evidence.

*Answer*, Exhibit E, p. 2.

The record demonstrates that the petitioner was provided with an opportunity to present documentary evidence in his defense. Moreover, as to his claim that he was denied access to legal material to prepare his defense, the petitioner does not identify the legal material, nor does he explain how it would have assisted him in the preparation of his defense.[5] On the record before me, the petitioner was provided adequate process under Wolff with regard to the opportunity to present his defense.

### 4. Failure to Provide an Impartial DHO

The petitioner alleges that he was denied due process because he was not provided an impartial hearing officer. "An impartial decisionmaker is a fundamental requirement of due process that is fully applicable in the prison context." Gwinn, 354 F.3d at 1220 (internal quotations omitted). However, "honesty and integrity are presumed on the part of a tribunal." Id. Therefore, "there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." Id. "Due process is violated only when the risk of unfairness is intolerably high under the circumstances of a particular case." Id. (internal quotations omitted).

Here, the petitioner alleges that the DHO was not impartial because the petitioner had previously named him as a defendant in a civil rights complaint filed in the District of Kansas. The petitioner states:

> Plaintiff complains the DHO is partial due to his knowledge and conflict involved in the already filed suit. [F]acts were clear that evidence is severely conflicting, and Judge convicted plaintiff at a charge without facts, then altered evidence in the case when his ruling had no basis for conviction.

---

[5]The petitioner does not discuss this claim in his Memorandum.

*Memorandum*, p. 8.

The petitioner's conclusory allegations are insufficient to establish that the DHO was "actually biased with respect to factual issues being adjudicated," in light of the evidence before the DHO. In addition, I note that the petitioner's allegations that the DHO (1) found him guilty of the charge without facts, and (2) altered the evidence, are without merit as discussed below.

### B.  Claim Two

Claim Two alleges that the petitioner was denied his due process rights because the evidence against him was insufficient. *Application*, p. 4; *Memorandum*, pp. 9-11. "[I]n ascertaining whether a factfinder's decision in a prison disciplinary hearing is sufficiently supported by the evidence, a reviewing court need not undertake an examination of the entire record, independent assessment of witnesses' credibility or weighing of the evidence. Instead, the relevant question is whether there is any evidence that could support the conclusion reached by the disciplinary board." Gwinn, 354 F.3d at 1219.

In reaching his decision, the DHO stated:

> [B]ased upon the greater weight of the staff member's documented account which the DHO found more credible, the DHO finds inmate Brown did commit the prohibited act of Codes 103 (Setting a Fire) and Code 307 (Refusing an Order).

*Answer*, Exhibit E, p. 2.

The staff member's documented account of the incident states:

> On 09-07-04, at approximately 11:35AM, while serving the noon meal in Building 63, inmate Brown #05937-010 began throwing his noon meal onto the range. He then threw some newspapers from his cell onto the range that he had set on fire. I ordered this inmate to "cuff up" and he refused, stating "Fuck you mother fuckers, get a team". The fire was extinguished.

*Answer*, Exhibit B, first consecutive page.

This evidence supports the conclusion that the petitioner refused an order and set a fire. Consequently, the petitioner's challenge to the sufficiency of the evidence is without merit.

### C.  Claim Three

Claim Three alleges that the petitioner was denied his due process rights because the DHO changed the facts on his report.  *Application* , p. 3.  Specifically, the petitioner complains that, after the Regional Director required the DHO to amend his report to add his reasons for imposing sanctions, the DHO added facts that were not supported by the evidence in violation of the petitioner's due process rights.  *Memorandum*, pp. 12-14.  To the contrary, the facts stated in the initial DHO report are identical to the facts in the amended DHO report.  The only substantive difference between the initial report and the amended report is the addition of the DHO's reasons for imposing sanctions, as required by the Regional Director.  The DHO did not add factual allegations in his reasons for imposing sanctions; he merely stated his reasons for imposing sanctions:

> Setting a fire may be extremely serious and possibly life threatening to staff and inmates.  Your actions could have easily resulted in injury to yourself and/or other staff and inmates and possibly resulted in hundreds or thousands of dollars in property damage. Sanctions were imposed in an effort to impress on you the gravity of your actions and hopefully deter you from such action in the future.
>
> Refusing to obey an order of a staff member, especially in a Penitentiary, is considered disruptive and a threat to the orderly operation of the Institution and hampers staff's ability to control their areas of responsibility.  Sanctions were imposed in an effort to impress on Inmate the gravity of his actions and hopefully deter him from such actions in the future.

> Although not directly related to the offense, it is believed that this sanction (loss of telephone and commissary privileges) will have a significant impact on your future behavior.

*Answer*, Exhibit G, p. 2.

In addition, the petitioner claims that the confusion in recording the correct date of the incident somehow affects his due process rights. *Memorandum*, p. 13. I decline to find a violation of constitutional magnitude based upon a clerical error.

### III.  CONCLUSION

The petitioner was afforded the process due to him under Wolff. Accordingly,

IT IS ORDERED that the Order to Show Cause is DISCHARGED and the Application is DENIED.

Dated April 3, 2006.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge